Thank you, Your Honors. My name is David Ness with the Federal Defenders of Montana, and I represent the petitioner, Mr. Buckles. As the Court is aware, the issue in this case is whether or not Mr. Buckles' 2255 petition is barred by the statute of limitations. The resolution of this issue, it seems to me, requires the Court to engage in a two-step analysis. The first thing the Court needs to do is to determine when his conviction became final. And there's two potential dates that I think the parties have agreed on, and that is whether it became final after this Court denied his petition for rehearing in July of 2007, or whether his conviction became final when the United States Supreme Court denied his petition for certiorari the following October.   I'm not sure. Well, I think there's another date. It is after the petition for rehearing is denied, and then 90 days thereafter when the period for seeking cert expires. Yeah, and I apologize, but I think his petition for rehearing was denied back in April. And so 90 days from that would then be July. That is correct. So it's plus 90 is where I'm going. That is correct. You might have meant to say that. I think I confused that. Okay. But even if the Court were to determine that his conviction became final in July of 2007 rather than the latter date in October, then I think the Court needs to determine whether or not he's entitled to equitable tolling in this case. The initial issue, I think, is somewhat unique in that everything that happened with respect to his contacts with the Court and his efforts to obtain counsel occurred in this Court. As the Court is aware from the record, he wrote his lawyer. He asked his lawyer to retain lawyer to help him obtain court-appointed counsel because he wanted to file a petition for certiorari. For whatever reason, he wasn't able to get a satisfactory response or really any response from his lawyer. And he then was forced to file a motion in this Court. In his affidavit and in his pleadings, he indicated that he then followed that up by asking his sister to call the clerk's office here. The clerk's office told him that they would rule on his motion for appointed counsel, and at least as it's relayed by Mr. Buckles, was also told that the Court would recall its mandate and that that would essentially toll the time or give him a new date in which to file a petition for certiorari. That turns out to be, if indeed that was the advice given to the sister, that was bad advice. That was, I'm sorry? That sounds like that was bad advice because the clerk of the Supreme Court says, I'm sorry. You've got 90 days. And when the mandate comes down, it's irrelevant to 90 days. And I guess that's then the subissue. The clerk of the Supreme Court, when he filed his cert petition, indicated that it had been filed late. And he also said that the proper date was the July 2007 time. And he communicated that in September, correct? That is correct. So a year from July 2, starting in September, he had noticed that he, that the clock was running. He had noticed as of September from the Supreme Court that the clock was running as of July. Isn't that correct? I would disagree with that, Judge, because, you know, the Supreme Court has the authority to accept late-filed petitions. All that happened here is the clerk of the Supreme Court indicated that the petition was, in his opinion, filed late. But I don't think that that's a legal ruling whatsoever. He then passed it on to the judges, and the judges denied cert. We don't know why they denied cert. It could be for a multitude of reasons. It could have simply been that he couldn't get four judges to agree that cert was appropriate, given the issue. So I don't think that the Supreme Court's clerk's notation or the Supreme Court's clerk's decision on opinion on that issue is a binding effect upon him. Well, we're talking about equitable tolling. It's a question of notice. Whether it's binding on him or the legal matter has certainly put him on notice that the clock, good argument that the clock started running as of July. But at the same time, he had been told by the clerk of the Ninth Circuit that a new mandate would issue, and that would start the time over again. And he filed his cert petition within the 90 days after the new mandate. And quite honestly, this is something that confuses me. I'm not exactly sure. I guess I am somewhat sure, I think, that whatever the clerk at the Supreme Court said had no binding effect. And he was entitled, I think, to rely upon what he was told by the clerk of the Ninth Circuit. And that's a tough argument, because what he's told by the clerk of the Ninth Circuit is, I'll say, questionable. Questionable, actually, is to quote what he was told, because we have nothing in writing from the clerk of the Ninth Circuit. We have a recounting of a conversation between the clerk and the sister, and then what the sister says to him and what he says his sister says to him. Oh, boy. And on the other hand, we have in writing from the clerk of the Supreme Court an application of the rules of the Supreme Court. If I'm going to decide which of those two I'm going to rely on, I'm not going to rely on orally transmitted advice from a clerk at the Ninth Circuit as to what the Supreme Court rules are. I'm going to rely on a written statement from the clerk of the Supreme Court as to what the Supreme Court's rules are. He did, however, file with the Supreme Court his affidavit, essentially saying, look, this is what happened. I don't think that my petition was late. So he did do that. And I'm hard-pressed to disagree with you that out of an abundance of caution, at least in filing his 2255 petition, perhaps he should have tried to go with that earlier date. But that's out of an abundance of caution. And I don't know that he was – I think it's impossible for this Court to say that he was in fact wrong insofar as his conclusion that he had a year from the October denial of his cert petition to file his 2255 petition. And we, of course, were back in the same situation as we were earlier today. We have a pro se litigant. Correct. And the world of lawyering is complicated. Correct. Correct. And that actually, I think, kind of gets me into the equitable tolling argument. You know, Mr. Buckles clearly relied, explicitly relied upon Ninth Circuit rules saying that he was entitled to his attorney's help in asking the Court, approaching the Court to appoint counsel for him. And I think it's – you can't conclude otherwise but that he wasn't – he was in fact diligent in pursuing that remedy. He wrote – called his lawyer. He wrote his lawyer. He followed that up with a motion to the Court. His affidavit, which is uncontested at this point, that his sister called – The story he recounts is accurate, and I have no reason to distrust this part of the story. I think Mr. Sands sold him down the river. And so he – I think it's fair to say that Mr. Buckles did, you know, everything that he could do, and in fact he did diligently proceed – he was diligent in asserting his rights. And I think comparing what happened in his case with the Spitzen case and the – I filed a 28-J letter on Friday citing the new case from the Supreme Court of Holland, combined with, in this case, the – at this point uncontested, that he received faulty advice from the clerk's office here, that there's extraordinary circumstances. And I think that he satisfies the second prong for equitable tolling, and that is that he was diligent. Okay. Why don't we hear from the government, and we'll give you a chance to respond. Good morning. Laurie Sook for the United States. The United States does believe that this issue boils down to the second prong of equitable tolling because we just don't believe there is any way that the Court can find that Mr. Buckles met any of the deadlines. Every deadline down the line he missed. And that was – the Court doesn't have to find he did that in bad faith. He was simply miscalculating deadlines. He filed his petition for rehearing late. This Court only recalled the mandate to consider his motion for appointment of counsel. That order could have easily granted him counsel and given more time for – to file the cert petition. But that wasn't done. So then he filed the cert petition late in the Supreme Court. And he did receive notice in September from the clerk of the Supreme Court that the clock was running. What are we to do with the argument? That strikes me as an interesting one. The clerk writes back, this is not timely. But then we get sort of a standard line from the Supreme Court later that says cert denied. And that line doesn't say denied as untimely. It just says denied. And his argument is, well, I took that then to be a – I'm now giving him lawyer talk that he doesn't quite have, but I'm giving him the – in lawyer talk, he's saying, well, I took that to be a denial of certiorari, not as untimely. It's a denied cert. And a denial of cert, it runs from them. Your Honors – I just heard that argument. What's your response?  We did address that in the brief on pages 12 and 13. And the law is certainly from district courts. It seems to be where these habeas arguments come. But there are three courts, and basically it boils down to this, that there is no significance in the Supreme Court denying that untimely petition because a – you can't resurrect an untimely filed petition with a later order. That's how these three courts help. But hang on just a second. I think it's right in a criminal case that untimeliness is not a jurisdictional bar. That's correct. And the Supreme Court could have chosen to grant the cert despite its late filing. It could have done that. Right. And it didn't do that. Well, but because it could have done that, its denial doesn't necessarily mean this is a denial because of untimeliness. It certainly doesn't, but it doesn't mean the opposite. What we do know and what the record is, is that the cert petition was filed late, and it became final at that point, and he had noticed in September of 07 that the petition, his habeas petition, was due a year from July 2, 2007. We agree. Mr. Buckles has been very diligent, and if you look at the filings in his cases, he is actually very skilled for a pro se litigant. When you look at extraordinary circumstances in the view of the United States, that actually cuts against him because what stopped him from filing the petition that he ultimately filed? Nothing but his miscalculation of the deadline. He certainly, we agree, that he did not get the service that he should have gotten from his retained lawyer, but nothing that the retained lawyer did stopped him from filing this petition. Cases like he didn't have his paperwork or he was actually provided advice where he was given a wrong deadline. That didn't happen here. He was actually given the correct deadline by the Supreme Court. He didn't just have days. He had 10-plus months to file a timely habeas petition. He just didn't do it. The Supreme Court didn't give him a deadline in terms for filing his 2255. To the extent the Supreme Court did anything, we have the statement from the clerk that your cert petition is untimely, and then we have the Supreme Court's order denying cert. He's left with that to calculate when his 2255 is due. Well, but the law says that the year deadline starts when the case becomes final. And that is when the cert petition was due in this case. And no, the notice from the Supreme Court wasn't and you have to file in this date. But the Supreme Court told him that it just didn't say that the petition was untimely. It actually gave him the date when it should have been filed. And he had 10 to 11 months from that point. That's not quite the same thing as a ruling on the merits. It is not. In fact, the Supreme Court in October could have decided to ignore the late filing. It could have. Okay. If it could have, then why isn't that when it became final? Why is the date? All the clerk says has been noted on the file that it was filed late and it should have been in by a precise date. But why does that then translate into a final ruling if, in fact, you're acknowledging the Supreme Court could have granted him relief in October or could have waited from the first calendar to the second? It could have waited until November. What would have then be the situation? He would have filed a 2255. And let's suppose he was very diligent. He filed a 2255 in September and the Supreme Court granted cert. Your Honor, that is. Then suddenly he wouldn't have a final judgment. That is a different fact scenario, and that actually could be the case. This question that you're raising is exactly what the United States believed was the most interesting question in this, is what was the effect of that September denial of cert. And I can only, again, turn you to our brief in pages 12 and 13, where we did find three cases where courts addressed this exact issue. And in all three, they found that there was no significance to that denial of cert of an untimely-filed petition. And the ---- as recently as a month ago, doesn't mean anything. You can't infer anything as to the Supreme Court's reasons for denying cert. It was a discretionary decision. But what you've surfaced that I haven't truly focused on until now is that so long as the Supreme Court has the discretion to ignore the fact that it was untimely filed, that it isn't jurisdictional to the Supreme Court and retains the jurisdiction, then the justices have, in fact, not finally ruled on that petition until they actually deny cert, because they actually do go through and make those decisions as a merits decision in the sense of whether or not to exercise discretion at their first conference, whether it was in August or September or October or whatever. So that's troublesome that you should say, well, then the letter is what is the evidence of a final decision, when, in fact, the Supreme Court actually itself issued a subsequent order. But that subsequent order, we don't know the basis for it. That's true. But as I've said ---- The fact is, that's not the point, is it? The fact is that they could have. They could have until they exercised their discretion not to grant. They could have accepted it as timely and addressed it on the merits. But they didn't do that. And as I've said, these three cases address that exact issue. What if the Supreme Court had not clerked out and sent a letter? We would still have the same argument that the cert petition was late, because this Court did not give more time to address ---- did not ---- the only thing that the recall of the mandate did was deny the motion for appointment of counsel. And so the rules ---- I understand that. Right. So we would make the same argument that you have the ---- It's a mechanical calculation. It is a mechanical calculation. And we believe in this case what happened is that Mr. Buckles simply missed the deadline. And the real issue here is whether the only thing that saves him is equitable polling and actually whether he can establish extraordinary circumstances. And in our view, he had 11 months to do that. In an abundance of caution, he should have met that deadline. Nothing stopped him from meeting that deadline. And that is not extraordinary circumstances. This is an interesting question. I mean, this was close and for me a little bit difficult because he's filing his cert petition in a reasonable way as he understands what he's supposed to do. I'm now trusting that the information that his sister got from the clerk's office is accurately recounted and then accurately conveyed to him. He's not sort of waiting 10 years to file a cert petition. He's not. Let me kind of spin this out. And he then files it in a way that he thinks is timely. Correct. The clerk sends him a note saying, sorry, not timely. The Supreme Court thereafter denies. Now, if we're thinking like lawyers, and this is always one of the tricks with respect to process. When do you think like lawyers and when do you think like process? If we're thinking like lawyers, we may think along the lines that Judge Fisher was just spinning out. Well, the Supreme Court doesn't deny cert until later and it doesn't tell us why. And it had the capacity to grant or deny despite the timeliness. So maybe, in fact, the time runs from the time of the denial by the United States Supreme Court. Or maybe, given the possibility that the Supreme Court was denying not on timeliness but denying on the merits, that he is at least reasonably entitled to rely on that even if he's wrong. Now, I'm trying to figure out how to distinguish this case where it's close from a case where he files for cert 10 years after. You know, he wants to file himself only 255. Sure. He gets a conviction. He waits 10 years. He files for cert. It's late. Legally speaking, the Supreme Court can still, I guess, entertain it even though it's late, although there's no snowball's chance, and I don't quite know how to say the bad word, but it's happening. That shouldn't be a way for somebody to revive and sort of take care of the deadline problem. So I'm a little reluctant to say that that automatically satisfies the deadline, the fact that it's late and the Supreme Court denies cert without saying anything, but maybe it's enough for equitable tolling in the sense that if you run through that where we don't have unconscionable delays, he's trying very hard to do this, and at least that's susceptible to that interpretation. What's your response to an equitable tolling argument that runs along those lines? Well, here's the distinction. When you're talking about a case that's terribly late, like 10 years, the petitioner doesn't even meet the first prong of equitable tolling, which is diligence. And in this case, we're not arguing that Mr. Buckles wasn't diligent. In fact, we're arguing that actually he did have some basis for his belief. As Judge Fischer has pointed out and as you have pointed out, there is some basis for his belief in when he filed these things, except for the petition for rehearing, which was just clearly late. But in deciding whether that is extraordinary circumstances and looking at the cases of this circuit, it just doesn't meet that ground. That's a pretty high burden, and the only thing that stopped him from filing this petition timely is his miscalculation of the deadline, albeit in good faith. It's just a miscalculation of the deadline. There was no other hurdle that stopped it, and our position is that's not extraordinary circumstances. In the other category, you wouldn't even have a petitioner meeting diligence. We do agree that diligence is not your inquiry here. It's whether he's met extraordinary circumstances, and that's where we're starting from, which is the difference. Okay. Fair enough. Thank you. Are there other questions on the bench? Thank you. Response? Real quickly, Your Honors. He has set forth facts in his affidavit that he was misled by, if you want to put it that way, misled by the clerk's office. There are cases cited in Spitzley's court, the Brambles case, I believe, where this court applied equitable estoppel in the case where a district court judge misinterpreted the law and misled a petitioner. So I think being misled by the clerk's office does satisfy the extraordinary circumstances. And I think just one other point. The questions asked by the court, I think, hit the nail on the head, that habeas is an equitable remedy. Principles of equity apply here. The Eleventh Circuit cases that the government is relying on involve really different fact patterns. There was no indication that there was, in fact, things filed with the Supreme Court showing that good faith position that, hey, this is on time. Those petitions were just clearly laid with no real excuses offered. Here there was, and then you come back to we don't know why cert was denied, and there was a good faith argument that very well could have been accepted by the Supreme Court justices, but they denied cert on the merits for all we know. And his reliance, I think, also on what the clerk said, going back to the Wilkins case with the Supreme Court, and I cited some other cases where other circuit courts of appeal have withdrawn their mandate in order to give a person extra time to file a cert petition, I think was reasonable. So given that the equities involved here, I think he's entitled to, at the very least, equitable estoppel. And I guess going beyond that, I think that the Court should rule in his favor here, but if not, it should remand for further proceedings in the district court to determine whether or not equitable estoppel would, in fact, apply. Thank you. Thank you. The case of United States v. Buckles is submitted. Thank you for nice arguments on both sides. The next case on the argument calendar is United States v. I may or may not pronounce it correctly. Spiro or Spiro?
judges: Bury, Fletcher W. , Fisher